Sean P. Reis (SBN 184044)
sreis@edelson.com
EDELSON MCGUIRE LLP
30021 Tomas Street, Suite 300
Rancho Santa Margarita, California 92688
Telephone: (949) 459-2124
Fax: (949) 459-2123

Jay Edelson* (jedelson@edelson.com)
Rafey S. Balabanian* (rbalabanian@edelson.com)
William C. Gray* (wgray@edelson.com)
Ari J. Scharg* (ascharg@edelson.com)
EDELSON MCGUIRE LLC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Telephone: (312) 589-6370
Fax: (312) 589-6378

* Admitted *pro hac vice*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| DANIEL RODRIGUEZ, individually and on behalf of a class of similarly situated individuals,<br><br>　　　　　Plaintiff,<br>　　v.<br><br>SONY COMPUTER ENTERTAINMENT AMERICA LLC, a Delaware limited liability company, SONY NETWORK ENTERTAINMENT INTERNATIONAL LLC, a Delaware limited liability company, and JOHN DOE DEFENDANTS 1-10,<br><br>　　　　　Defendants. | Case No. 11-CV-4084-PJH<br><br>[Hon. Phyllis J. Hamilton]<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>**CLASS ACTION**<br><br>DEMAND FOR JURY TRIAL |

---

FIRST AMENDED CLASS ACTION COMPLAINT　　　　　　　　　　　　　　　　　CASE NO. 11-CV-4084-PJH

Plaintiff Daniel Rodriguez ("Plaintiff"), individually and on behalf of all others similarly situated, brings this First Amended Class Action Complaint against Defendants Sony Computer Entertainment of America LLC ("SCEA"), Sony Network Entertainment International LLC ("SNEI"), and John Doe Defendants 1-10 (collectively, "Defendants"), and alleges upon personal knowledge as to himself and his own acts and experiences, and upon information and belief as to all other matters, including investigation conducted by his attorneys:

## INTRODUCTION

1. Plaintiff Daniel Rodriguez brings this First Amended Class Action Complaint against Defendants for their unlawful retention and disclosure of their his and the other putative Class Members' personally identifiable information, including movie and video game rental and purchase histories, in violation of the Video Privacy Protection Act, 18 U.S.C. §§ 2710, *et seq.* ("VPPA").

2. Defendants are a collection of companies that sell and rent movies and video games to consumers.

3. Defendants maintain a digital record system that details the purchase histories of every consumer that buys or rents a movie or video game from them.

4. As a result, Defendants maintain a veritable digital dossier on thousands, if not millions, of consumers throughout the country. These records contain a highly detailed account of the consumer's video programming viewing history. Defendants maintain and store this information indefinitely.

5. In recognition of the fact that companies that rent or sell movies and video games—like Defendants—must collect certain confidential and sensitive consumer information with respect to personal viewing habits, the VPPA requires such companies to "destroy personally identifiable information as soon as practicable." 18 U.S.C. § 2710(e).

6. However, in direct contravention of the protections afforded to consumers under the VPPA, Defendants retain and store their customers' movie and video game purchase and

rental histories for an indefinite period of time.

7. Accordingly, Defendants have knowingly retained the "personally identifiable information" and sensitive video programming viewing histories of millions of consumers, and disclosed such information, in violation of the VPPA.

8. SNEI also uses the information identified in Paragraph 6 for, among other things, marketing and advertising, without obtaining the "informed, written consent of the consumer at the time disclosure is sought," 18 U.S.C. § 2710(b)(2)(b), and without providing Defendants' consumers "with the opportunity, in a clear and conspicuous manner, to prohibit such disclosure." § 2710(b)(2)(D)(i).

## PARTIES

9. Plaintiff Daniel Rodriguez is a natural person domiciled in the state of New York.

10. Defendant Sony Computer Entertainment America LLC ("SCEA") is a limited liability company organized and existing under the laws of the State of Delaware with its principal place of business and headquarters located at 919 East Hillsdale Blvd., Foster City, California.

11. Defendant Sony Network Entertainment International LLC ("SNEI") is a limited liability company organized and existing under the laws of the State of Delaware with its principal place of business and headquarters located at 6080 Center Dr., Los Angeles, California.

12. John Doe Defendants 1-10 are SCEA's and SNEI's subsidiaries, agents, affiliates, and third-party affiliates that directly participate in the acts and practices alleged herein. John Doe Defendant(s) purchase, view, or receive, and otherwise have access to SCEA's and SNEI's customers' "personally identifiable information," as that term is defined by the VPPA, and its customers' movie and video game purchase and rental histories. John Doe Defendant(s), SCEA, and SNEI profit from the acts and practices alleged herein.

## JURISDICTION AND VENUE

13. This Court has subject matter jurisdiction over Plaintiff's claims arising under the

laws of the United States pursuant to 28 U.S.C. § 1331.

14. This Court has personal jurisdiction over Defendants because Defendants do business in the State of California, including in this District, and Defendants maintain their principal place of business and corporate headquarters in this District.

15. This Court is an appropriate venue for the adjudication of this controversy because Defendants reside in this District and a substantial part of the events giving rise to Plaintiff's claims occurred in this District.

## FACTUAL BACKGROUND

### The Video Privacy Protection Act and Digital Dossiers

16. The desire to keep video programming purchase and viewing records private led Congress to enact the Video Privacy Protection Act in 1988. Inspired by the release of video viewing records of Supreme Court Justice Nominee Robert H. Bork and his family, Congress promulgated the Act to explicitly preserve United States citizens' right to privacy in their video viewing histories.

17. When the VPPA was introduced, the late Senator Paul Simon noted that,

> There is no denying that the computer age has revolutionized our world. Over the past 20 years we have seen remarkable changes in the way each one of us goes about our lives. Our children learn through computers. We bank by machine. We watch movies in our living rooms. These technological innovations are exciting and as a nation we should be proud of the accomplishments we have made. Yet, as we continue to move ahead, we must protect time honored values that are so central to this society, particularly our right to privacy. The advent of the computer means not only that we can be more efficient than ever before, but that we have the ability to be more intrusive than ever before. *Every day Americans are forced to provide to businesses and others personal information without having any control over where that information goes. These records are a window into our loves, likes, and dislikes.*

S.Rep. No. 100-599 at 7-8 (1988) (emphasis added).

18. Congressional concern for the retention of personally identifiable information is further reflected in the remarks of Senator Patrick Leahy who has stated that "the trail of information generated by every transaction that is now recorded and stored in sophisticated record-keeping systems is a new, more subtle and pervasive form of surveillance." S.Rep. No. 100-599 at 8 (1988).

19. Many glaring and dangerous privacy issues are implicated by Defendants' practice of retaining video programming viewing history indefinitely—the exact type of dangers that the VPPA was enacted to thwart.

20. Accordingly, the VPPA affords consumers robust protections with respect to the storage, confidentiality, and ultimate destruction of any records concerning the names and titles of any audiovisual materials they have rented or purchased.

21. Specifically, the VPPA requires video-programming providers to destroy "personally identifiable information as soon as practicable, but no later than one year from the date the information is no longer necessary for the purpose for which it was collected…." 18 U.S.C. § 2710(e).

22. Under the VPPA, the term "personally identifiable information" means all "information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider." 18 U.S.C. § 2710(a)(4).

23. The VPPA also requires "video tape service providers" to keep all "personally identifiable information" strictly confidential. In fact, names, addresses, and subject matter cannot even be used for marketing purposes unless the customer has been provided with "the opportunity, in a clear and conspicuous manner, to prohibit such disclosure." 18 U.S.C. § 2710(b)(2)(D)(i)-(ii).

**The Personal Information Market: Consumer Data Has Monetary Value**

24. In 2001, Federal Trade Commission ("FTC") Commissioner Orson Swindle

recognized that "the digital revolution … has given an enormous capacity to the acts of collecting and transmitting and flowing of information, unlike anything we've ever seen in our life … [and] individuals are concerned about being defined by the existing data on themselves."[1]

25. More than a decade later, Commissioner Swindle's comments ring truer than ever, as consumer data feeds an information marketplace that supports a $26 billion dollar per year online advertising industry in the United States.[2]

26. The FTC has also recognized that consumer data possesses inherent monetary value within the new information marketplace:

> Most consumers cannot begin to comprehend the types and amount of information collected by businesses, or why their information may be commercially valuable. *Data is currency. The larger the data set, the greater potential for analysis—and profit.*[3]

27. In today's digital marketplace, consumers engage in *quid pro quo* transactions with online businesses whereby individuals exchange personal information for services.

28. It is now a nearly ubiquitous practice for online companies that collect consumer information—such as, names, addresses, occupations, political and religious affiliations, sexual orientation, education, and cultural interests—to share such data, for a profit, with numerous third party marketers without any input from, or disclosure to, the source consumer.

29. In fact, consumers' personal information has become such a valuable commodity that companies now offer individuals the opportunity to sell their personal information

---

[1] The Information Marketplace, Merging and Exchanging Consumer Data, http://www.ftc.gov/bcp/workshops/infomktplace/transcript.htm (last visited December 19, 2011).

[2] *See*, Web's Hot New Commodity: Privacy, http://online.wsj.com/article/SB10001424052748703529004576160764037920274.html (last visited December 19, 2011).

[3] Statement of FTC Commissioner Pamela Jones Harbour, http://www.ftc.gov/speeches/harbour/091207privacyroundtable.pdf (last visited December 19, 2011) (emphasis added).

themselves.[4] In this way, consumers are becoming more empowered to direct where their personal information is shared, and to directly profit from their own data.

30. Because SCEA and SNEI refuse to destroy their customers' personally identifiable information, as required by the VPPA, they have diluted the value of their customers' property as it exists in the personal information market.

31. Further, and as discussed below, by using SCEA's customers' personally identifiable information for marketing and demographic studies without their consent, SNEI has diluted the value of SCEA's customers' property as it exists in the personal information market.

**Defendants Systematically Violate The VPPA**

32. SCEA and SNEI are American companies that sell and/or rent, amongst other items, movies and video games to consumers.

33. SCEA and SNEI collect customers' movie and video game purchase and rental histories, and store such information for an indefinite period of time.

34. The movie and video game purchase and rental histories that SCEA and SNEI store includes every movie and video game that the customer has ever rented or purchased, as well as information which identifies the customer as having requested or obtained specific movie or video game materials or services.

35. Accordingly, SCEA and SNEI systematically violate the VPPA by storing and maintaining its customers' "personally identifiable information," as that term is defined by the VPPA.

36. Additionally, SCEA shares and/or sells its customers' movie and video game purchase and rental histories with SNEI and John Does Defendants 1-10.

37. SNEI and John Doe Defendants 1-10 use such "personally identifiable information" (i.e., SCEA's customers' movie and video game purchase and rental histories) for

---

[4] "You Want My Personal Data? Reward Me for It," http://www.nytimes.com/2010/07/18/business/18unboxed.html (last visited December 19, 2011).

marketing purposes and to conduct demographic studies, without the consent of SCEA's customers.

### FACTS RELATING TO PLAINTIFF RODRIGUEZ

38. Plaintiff Rodriguez was a customer and registered user of SCEA's PlayStation Network ("PSN"). PSN is an online multiplayer gaming and digital media delivery service operated by SCEA. Using the PSN, registered users can purchase, download, and stream television shows, movies, video games, and online magazines to their television sets on a pay-per-view basis.

39. Once PSN members purchase or rent a movie or video game, the content is instantly viewable and available. For rentals, however, the content is only available for a specified amount of time—between twenty-four (24) hours and thirty (30) days from the time of purchase.

40. Despite the fact that rented movies and video games are paid for at the time of rental, and are only available for a specified amount of time—at most thirty (30) days—SCEA permanently retains a log of these transactions, in violation of the VPPA, even after the user cancels his or her PSN account.

41. Plaintiff signed up for SCEA's PSN service in or about February 2008.

42. Throughout 2009, Plaintiff rented and purchased several movies and video games through SCEA's PSN.

43. Plaintiff has not rented or purchased any movies or video games from SCEA, or any other Defendant, since 2009.

44. Notwithstanding, SCEA failed to destroy Plaintiff's movie and video game purchase, viewing, and rental history and, although Plaintiff's transactions were completed thirty (30) days after purchase and/or rental, SCEA has continued to store and maintain such "personally identifiable information" to this day.

45. At some point after Plaintiff signed up for PSN through SCEA, a different

entity—SNEI—took over the PSN and its service:

> Sony Network Entertainment International LLC ("SNEI") is committed to respecting the privacy rights of all visitors to our websites and users of the PlayStation®Network ("PSN")....[5]

46. Although neither SCEA nor SNEI provided Plaintiff with any notice of this change, SCEA shared, sold, and/or transferred Plaintiff's "personally identifiable information" to SNEI.

47. As such, SNEI has retained, and continued to retain, Plaintiff's "personally identifiable information" for an indefinite period of time, without his consent.

48. SNEI also disclosed and continues to disclose Plaintiff's "personally identifiable information" for marketing purposes to John Doe Defendants 1-10, among others:

> SNEI may use personally identifying information for marketing and demographic studies.[6]

49. By using Plaintiff's personally identifying information for "marketing and demographic studies," SNEI has demonstrated that Plaintiff's personally identifying information has monetary value.

50. However, Plaintiff has never entered into any agreement with SNEI that would allow it to retain, use, or disclose Plaintiff's "personally identifiable information" for marketing or demographic studies. Nor has Plaintiff ever consented to allowing SNEI to retain, use, or disclose his "personally identifiable information" for any reason whatsoever and certainly not indefinitely.

## CLASS ALLEGATIONS

51. **Definition of the Class:** Plaintiff brings this lawsuit pursuant to Fed. R. Civ. P. 23(b)(2) and (3) on behalf of himself, a Class and two Subclasses of persons in the United States defined as follows:

---

[5] *See* SNEI Privacy Policy, http://www.sonyentertainmentnetwork.com/privacy-policy (last visited on December 20, 2011).

[6] *Supra*, fn. 5.

> **The SCEA Unlawful Retention Class**: All persons in the United States who (a) rented or purchased a movie or video game from Sony Computer Entertainment America LLC wherein (b) Sony Computer Entertainment America LLC retained, for more than thirty (30) days, their personally identifiable information, including information which identifies the person as having requested or obtained a specific movie or video game, and (c) without their consent.
>
> **The SNEI Unlawful Retention Subclass**: All members of the SCEA Unlawful Retention Class who (a) rented or purchased a movie or video game from Sony Computer Entertainment America LLC, wherein (b) Sony Computer Entertainment America LLC disclosed their personally identifiable information, including information which identifies the person as having requested or obtained a specific movie or video game, to Sony Network Entertainment International LLC, and (c) Sony Network Entertainment International LLC retained, for more than thirty (30) days, their personally identifiable information, and (d) without their consent.
>
> **The Unlawful Disclosure Subclass**: All members of the SCEA Unlawful Retention Class who rented or purchased a movie or video game from Sony Computer Entertainment America LLC and Sony Network Entertainment International LLC disclosed their personally identifiable information without consent.

(The Class and Subclasses are referred to collectively as the "Class.") Excluded from the Class are (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendants, Defendants' subsidiaries, parents, successors, predecessors, and any entity in which the Defendants or their parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's counsel, (4) persons who properly execute and file a timely request for exclusion from the class; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) all persons who have previously had claims similar to those alleged herein finally adjudicated or who have released their claims against Defendants.

52. **Numerosity:** Although the precise number of Class members is not known at this time, it is clear that individual joinder in this case is impracticable. The Class is composed of tens of thousands of individuals, all of who may be readily identified through Defendants' records.

53. **Commonality:** Common questions of law and fact pertain to both Plaintiff and the other members of the Class, and those questions predominate over any questions that may

affect individual members of the Class. Common questions for the Class include but are not limited to the following:

- Whether SCEA unlawfully retained its customers' movie purchase and rental histories;

- Whether SCEA unlawfully retained its customers' video game purchase and rental histories;

- Whether SNEI unlawfully retained SCEA's customers' movie purchase and rental histories;

- Whether SNEI unlawfully retained SCEA's customers' video game purchase and rental histories;

- Whether SNEI unlawfully disclosed SCEA's customers' movie purchase and rental histories;

- Whether SNEI unlawfully disclosed SCEA's customers' video game purchase and rental histories;

- Whether SCEA's and SNEI's conduct violates the Video Privacy Protection Act, 18 U.S.C. §§ 2710, *et seq.*

54. **Typicality:** The factual and legal bases of Defendants' liability to Plaintiff and to the other members of the Class are the same and resulted in injury to Plaintiff and all of the other members of the Class. Plaintiff and the other members of the Class have all suffered harm as a result of Defendants wrongful conduct.

55. **Adequate Representation:** Plaintiff will fairly and adequately represent and protect the interests of the Class members, and has retained counsel competent and experienced in complex class actions. Plaintiff has no interest antagonistic to those of the Class and Defendants have no defenses unique to Plaintiff.

56. **Predominance and Superiority:** This class action is appropriate for certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy, since joinder of all members is impracticable. The damages suffered by the individual members of the Class will likely be relatively small, especially given

1  the burden and expense of individual prosecution of the complex litigation necessitated by
2  Defendants' actions. It would be virtually impossible for the individual members of the Class to
3  obtain effective relief from Defendants' misconduct. Even if members of the Class themselves
4  could sustain such individual litigation, it would still not be preferable to a class action, because
5  individual litigation would increase the delay and expense to all parties due to the complex legal
6  and factual controversies presented in this Complaint. By contrast, a class action presents far
7  fewer management difficulties and provides the benefits of single adjudication, economy of
8  scale, and comprehensive supervision by a single court. Economies of time, effort, and expense
9  will be fostered and uniformity of decisions will be ensured.

10    57.    **Policies Generally Applicable to the Class:** This class action is also appropriate for certification because Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole. Defendants' policies challenged herein apply to and affect all members of the Class uniformly, and Plaintiff's challenge of these policies hinges on Defendants' conduct, not on facts or law applicable only to Plaintiff.

### COUNT I
### Violation of the Video Privacy Protection Act, 18 U.S.C. §2710 *et seq.*
### (On Behalf of Plaintiff and the Class)

58.    Plaintiff incorporates the foregoing allegations as if fully set forth herein.

59.    Both SCEA and SNEI are "video tape service providers" as defined by VPPA because they "engage in the business, in or affecting interstate or foreign commerce, of rental, sale, or delivery or prerecorded video cassette tapes or similar audio visual materials." 18 U.S.C. § 2710(a)(4).

60.    Plaintiff is a "consumer," as defined by the VPPA, because he is a "renter, purchaser, or subscriber of goods or services from a video tape service provider." 18 U.S.C. § 2710(a)(1).

61.    The VPPA requires that service providers "destroy personally identifiable

information as soon as practicable, but no later than one year from the date the information is no longer necessary for the purpose for which it was collected." 18 U.S.C. § 2710(e).

62. SCEA and SNEI store SCEA's customers' personal movie and video game purchase and rental histories for an indefinite period of time—far longer than is "practicable."

63. At some point after Plaintiff registered with PSN, in or about February 2008, SCEA transferred and/or shared and/or sold Plaintiff's movie and video game purchase and rental history to SNEI and John Doe Defendants 1-10. SNEI and John Doe Defendants 1-10 thereafter used and/or disclosed such personal and sensitive information for marketing and advertising purposes without Plaintiff's consent.

64. Accordingly, by disclosing Plaintiff's protected personal information, SNEI and John Does Defendants 1-10 caused injury to Plaintiff's common law right to privacy.

65. By disclosing Plaintiff's protected personal information, SNEI and John Doe Defendants 1-10 caused injury to Plaintiff's statutorily-protected right to privacy in his movie and video game purchase and rental history under 18 U.S.C. 2710(b).

66. Furthermore, and in violation of the 18 U.S.C. § 2710(e), SCEA has failed to destroy its customers' personal information as soon as practicable after it was no longer necessary (i.e., thirty (30) days after the rental and/or purchase) for the purpose for which it was collected (i.e., order fulfillment from the PSN).

67. Notwithstanding that SCEA failed to destroy Plaintiff's "personally identifiable information" when his transactions were completed (i.e., thirty (30) days after the rental and/or purchase), SCEA no longer manages or controls the PSN, and thus, the reason that SCEA collected "personally identifiable information" from Plaintiff in the first place no longer exists.

68. In fact, SCEA's Privacy Policy specifically provides that "THIS POLICY DOES NOT APPLY TO PlayStation®Network" and that the PSN is now managed and controlled exclusively by Sony Network Entertainment America Inc.[7]

---

[7] See, SCEA Privacy Policy, http://us.playstation.com/support/privacypolicy/index.htm (last visited December 21, 2011).

69. For this reason, SCEA should have destroyed Plaintiff's "personally identifiable information" when it ceased managing and controlling the PSN as it no longer needs Plaintiff's "personally identifiable information" for the reason it was collected.

70. Similarly, SNEI has failed to destroy its customers' personal information as soon as practicable (within one (1) year after receiving it from SCEA) after it was no longer necessary for the purpose for which it was collected.

71. SCEA's and SNEI's failure to destroy its customers' personal information as soon as practicable caused injury and continues to cause injury-in-fact to Plaintiff and the other members of the Class as they have a reasonable fear of the potential for misuse because of the continued storage of their personal information and movie and video game viewing histories.

72. Furthermore, customers' names, addresses, and the purchase and/or rental subject matter cannot even be used for marketing purposes unless SNEI first provides the customer with the "opportunity, in a clear and conspicuous manner, to prohibit such disclosure." 18 U.S.C. § 2710(b)(2)(D)(i).

73. Plaintiff's "personally identifiable information" was used and/or disclosed by SNEI for marketing purposes and for demographic studies without his informed, written consent, or an opportunity to prohibit such uses or disclosures.

74. By using Plaintiff's and the Class's personal information for "marketing and demographic studies," SNEI has demonstrated that Plaintiff's personal information has monetary value, and SNEI's failure to comply with 18 U.S.C. § 2710(b)(2)(D)(i) deprives Plaintiff and the Class of their statutorily-guaranteed right to monitor and control the disclosure and use of that data. As such, SNEI has diluted the value of Plaintiff's and the Class's personal property, and deprived them of the opportunity to sell their personal property for their own financial gain thereby causing Plaintiff and the other Class members injury-in-fact.

75. SCEA's and SNEI's illegal conduct should be enjoined, and Plaintiff and the Class should be awarded the maximum statutory and punitive damages available under 18 U.S.C.

§ 2710(c).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Daniel Rodriguez prays that the Court enter judgment in his favor and against Defendants Sony Computer Entertainment of America LLC, Sony Network Entertainment International LLC, and John Doe Defendants 1-10, and for the following relief:

A. Certify the action as a class action on behalf of the Class defined above, appoint Plaintiff as Class Representative, and designate his counsel as representatives of the Class;

B. Declare that Defendants' conduct, as described herein, violates the Video Privacy Protection Act, 18 U.S.C. §§ 2710, *et seq.*;

C. Award injunctive and other equitable relief as is necessary to protect the interests of Plaintiff and the Class, including both an order prohibiting Defendants from engaging in the wrongful and unlawful acts described herein and requiring Defendants to destroy its customers' personal information and video viewing histories that are no longer necessary for the purpose for which it was collected;

D. Award damages, including statutory damages of $2,500 under the Video Privacy Protection Act, 18 U.S.C. § 2710(c) and punitive damages where applicable, to Plaintiff and the Class in an amount to be determined at trial;

E. Award Plaintiff and the Class their reasonable litigation expenses and attorneys' fees;

F. Award Plaintiff and the Class pre- and post-judgment interest, to the extent allowable; and

G. Award such other and further relief as equity and justice may require.

## JURY TRIAL

Plaintiff demands a trial by jury for all issues so triable.

| | |
|---|---|
| Dated: December 21, 2011 | Respectfully submitted, |
| | **DANIEL RODRIGUEZ**, individually and on behalf of a class of similarly situated individuals, |
| | By: /s/ Sean P. Reis |
| | EDELSON MCGUIRE, LLP<br>30021 Tomas Street, Suite 300<br>Rancho Santa Margarita, CA 92688<br>Tel: (949) 459-2124 |
| | Jay Edelson*<br>Rafey S. Balabanian*<br>William C. Gray*<br>Ari J. Scharg*<br>EDELSON MCGUIRE, LLC<br>350 North LaSalle Street, Suite 1300<br>Chicago, Illinois 60654<br>Tel: (312) 589-6370<br>jedelson@edelson.com<br>rbalabanian@edelson.com<br>bgray@edelson.com<br>ascharg@edelson.com |
| | *Admitted *pro hac vice* |

## CERTIFICATE OF SERVICE

    I, Sean P. Reis, an attorney, certify that on December 21, 2011, I served the above and foregoing *First Amended Class Action Complaint*, by causing true and accurate copies of such paper to be filed and transmitted to all counsel of record via the Court's CM/ECF electronic filing system, on this the 21st day of December, 2011.

                                          /s/ Sean P. Reis