Sean P. Reis (SBN 184044)
sreis@edelson.com
EDELSON MCGUIRE LLP
30021 Tomas Street, Suite 300
Rancho Santa Margarita, California 92688
Tel: (949) 459-2124
Fax: (949) 459-2123

Jay Edelson* (jedelson@edelson.com)
Rafey S. Balabanian* (rbalabanian@edelson.com)
Ari J. Scharg* (ascharg@edelson.com)
EDELSON MCGUIRE LLC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: (312) 589-6370
Fax: (312) 589-6378
* Admitted *pro hac vice*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

DANIEL RODRIGUEZ, individually and on
behalf of a class of similarly situated
individuals,

        Plaintiff,

    v.

SONY COMPUTER ENTERTAINMENT
AMERICA LLC, a Delaware limited liability
company, SONY NETWORK
ENTERTAINMENT INTERNATIONAL
LLC, a Delaware limited liability company,
and SONY NETWORK ENTERTAINMENT
AMERICA, INC., a Delaware corporation,

        Defendants.

Case No. 11-CV-4084-PJH

[Hon. Phyllis J. Hamilton]

**SECOND AMENDED CLASS ACTION COMPLAINT**

**CLASS ACTION**

DEMAND FOR JURY TRIAL

       Plaintiff Daniel Rodriguez ("Plaintiff"), individually and on behalf of all others similarly

situated, brings this Second Amended Class Action Complaint against Defendants Sony

Computer Entertainment of America LLC ("SCEA"), Sony Network Entertainment International

LLC ("SNEI"), and Sony Network Entertainment America, Inc. ("SNEA") (collectively,

"Defendants"), and alleges upon personal knowledge as to himself and his own acts and

experiences, and upon information and belief as to all other matters, including investigation

conducted by his attorneys:

## INTRODUCTION

1.      Plaintiff Daniel Rodriguez brings this Second Amended Class Action Complaint against Defendants for their unlawful retention and disclosure of his and the other putative Class Members' personally identifiable information ("PII"), including movie and video game rental and purchase histories, in violation of the Video Privacy Protection Act, 18 U.S.C. §§ 2710, *et seq.* ("VPPA") and in breach of their customer contracts.

2.      Defendants maintain a digital record system that details the purchase and rental histories of every consumer that buys or rents a movie or video game from any of them.

3.      As a result, Defendants maintain a veritable digital dossier on thousands, if not millions, of consumers throughout the country. These records contain a highly detailed account of each consumer's video programming viewing history. Defendants maintain and store this information indefinitely.

4.      In recognition of the fact that companies that rent or sell movies and video games—like Defendants—must collect certain confidential and sensitive consumer information with respect to personal viewing habits, the VPPA requires such companies to "destroy personally identifiable information as soon as practicable." 18 U.S.C. § 2710(e).

5.      Further, and notwithstanding certain narrowly defined exceptions (none of which are applicable here), the VPPA also requires these companies to keep their customers' personally identifiable information confidential and prevents them from disclosing such PII without their customers' "informed written consent given at the time the disclosure is sought." 18 U.S.C. § 2710(b)(2)(b).

6.      However, in direct contravention of the protections afforded to consumers under the VPPA, Defendants retain and store their customers' movie and video game purchase and rental histories for an indefinite period of time.

7.      Accordingly, Defendants have knowingly and intentionally retained the

---

1  "personally identifiable information" and sensitive video programming viewing histories of

2  millions of consumers, and disclosed such information, in violation of the VPPA.

3  **PARTIES**

4        8.     Plaintiff Daniel Rodriguez is a natural person domiciled in the state of New York.

5        9.     Defendant Sony Computer Entertainment America LLC ("SCEA") is a limited

6  liability company organized and existing under the laws of the State of Delaware with its

7  principal place of business and headquarters located at 919 East Hillsdale Blvd., Foster City,

8  California.

9        10.    Defendant Sony Network Entertainment International LLC ("SNEI") is a limited

10  liability company organized and existing under the laws of the State of Delaware with its

11  principal place of business and headquarters located at 6080 Center Dr., Los Angeles, California.

12        11.    Defendant Sony Network Entertainment America, Inc. ("SNEA") is a corporation

13  organized and existing under the laws of the State of Delaware, with its principal place of

14  business and headquarters located at 550 Madison Avenue, New York, New York, 10022. SNEA

15  was incorporated on April 1, 2010.

16  **JURISDICTION AND VENUE**

17        12.    This Court has subject matter jurisdiction over Plaintiff's claims arising under the

18  laws of the United States pursuant to 28 U.S.C. § 1331 and 1332(d).

19        13.    This Court has personal jurisdiction over Defendants because Defendants do

20  business in the State of California, including in this District, and Defendants maintain their

21  principal place of business and corporate headquarters in this District.

22        14.    This Court is an appropriate venue for the adjudication of this controversy

23  because Defendants reside in this District and a substantial part of the events giving rise to

24  Plaintiff's claims occurred in this District.

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# FACTUAL BACKGROUND

## The Video Privacy Protection Act and Digital Dossiers

15.    The desire to keep video programming purchase and viewing records private led Congress to enact the Video Privacy Protection Act in 1988. Inspired by the release of video viewing records of Supreme Court Justice Nominee Robert H. Bork and his family, Congress promulgated the Act to explicitly preserve United States citizens' right to privacy in their video viewing histories.

16.    When the VPPA was introduced, the late Senator Paul Simon noted that,

> There is no denying that the computer age has revolutionized our world. Over the past 20 years we have seen remarkable changes in the way each one of us goes about our lives. Our children learn through computers. We bank by machine. We watch movies in our living rooms. These technological innovations are exciting and as a nation we should be proud of the accomplishments we have made. Yet, as we continue to move ahead, we must protect time honored values that are so central to this society, particularly our right to privacy. The advent of the computer means not only that we can be more efficient than ever before, but that we have the ability to be more intrusive than ever before. *Every day Americans are forced to provide to businesses and others personal information without having any control over where that information goes. These records are a window into our loves, likes, and dislikes.*

S.Rep. No. 100-599 at 7-8 (1988) (emphasis added).

18.    Congressional concern for the retention of personally identifiable information is further reflected in the remarks of Senator Patrick Leahy who has stated that "the trail of information generated by every transaction that is now recorded and stored in sophisticated record-keeping systems is a new, more subtle and pervasive form of surveillance." S.Rep. No. 100-599 at 8 (1988).

19.    Many glaring privacy issues are implicated by Defendants' practice of both

---

disclosing and indefinitely retaining video programming viewing history—the exact type of dangers that the VPPA was enacted to thwart.

20.     Accordingly, the VPPA affords consumers robust protections with respect to the storage, confidentiality, and ultimate destruction of any records concerning the names and titles of any audiovisual materials they have rented or purchased.

21.     Specifically, the VPPA requires video-programming providers to destroy "personally identifiable information as soon as practicable, but no later than one year from the date the information is no longer necessary for the purpose for which it was collected…." 18 U.S.C. § 2710(e).

22.     Under the VPPA, the term "personally identifiable information" means all "information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider." 18 U.S.C. § 2710(a)(4).

23.     The VPPA also requires "video tape service providers" to keep all "personally identifiable information" strictly confidential. Names, addresses, and subject matter cannot even be used for marketing purposes unless the customer has been provided with "the opportunity, in a clear and conspicuous manner, to prohibit such disclosure given at the time the disclosure is sought." 18 U.S.C. § 2710(b)(2)(D)(i)-(ii).

### The Personal Information Market: Consumer Data Has Monetary Value

24.     In 2001, Federal Trade Commission ("FTC") Commissioner Orson Swindle recognized that "the digital revolution … has given an enormous capacity to the acts of collecting and transmitting and flowing of information, unlike anything we've ever seen in our life … [and] individuals are concerned about being defined by the existing data on themselves."[1]

25.     More than a decade later, Commissioner Swindle's comments ring truer than ever, as consumer data feeds an information marketplace that supports a $26 billion dollar per

---

[1]     The Information Marketplace, Merging and Exchanging Consumer Data, http://www.ftc.gov/bcp/workshops/infomktplace/transcript.htm (last visited May 16, 2012).

1  year online advertising industry in the United States.[2]

2        26.     The FTC has also recognized that consumer data possesses inherent monetary

3  value within the new information marketplace: "Most consumers cannot begin to comprehend

4  the types and amount of information collected by businesses, or why their information may be

5  commercially valuable. *Data is currency. The larger the data set, the greater potential for*

6  *analysis—and profit*."[3]

7        27.     In today's digital marketplace, consumers engage in *quid pro quo* transactions

8  with online businesses whereby individuals exchange personal information for services.

9        28.     It is now a nearly ubiquitous practice for online companies that collect consumer

10  information—such as, names, addresses, occupations, political and religious affiliations, sexual

11  orientation, education, and cultural interests—to share such data, for a profit, with numerous

12  third party marketers without any input from, or disclosure to, the source consumer.

13        29.     In fact, consumers' personal information has become such a valuable commodity

14  that companies have offered individuals the opportunity to sell their personal information

15  themselves.[4] In this way, consumers are becoming more empowered to direct where their

16  personal information is shared, and to directly profit from their own data.

17        30.     While companies and consumers recognize the value of consumer data,

18  consumers also place an economic value on the privacy of their personal information.

19        31.     Indeed, research indicates that the "real policy issue is not whether consumers

20  value online privacy" because "[i]t is obvious that people value online privacy." Instead, the

21

22  _____

23  [2]     *See*. Web's Hot New Commodity: Privacy.
    http://online.wsj.com/article/SB10001424052748703529004576160764037920274.html (last
24  visited May 16, 2012).

25  [3]     Statement of FTC Commissioner Pamela Jones Harbour,
    http://www.ftc.gov/speeches/harbour/091207privacyroundtable.pdf (last visited May 16, 2012)
26  (emphasis added).

27  [4]     "You Want My Personal Data? Reward Me for It,"
    http://www.nytimes.com/2010/07/18/business/18unboxed.html (last visited May 16, 2012).

28

1    experts have moved on to the question of "how *much* people value online privacy."[5]

2       32.     Research confirms that when consumers are adequately informed about privacy

3    practices, "some consumers are willing to pay a premium to purchase from more privacy

4    protective websites."[6]

5       33.     Thus, and given the value that consumers and businesses place on consumer data,

6    and consumers' preference for information privacy, when consumers are denied the statutorily

7    guaranteed privacy protections that accompany a paid purchase or transaction, they do not

8    receive the full monetary value of those purchases or transactions.

9       34.     Further, because Defendants continue to disclose and refuse to destroy or

10   otherwise dispossess themselves of their customers' personally identifiable information, as

11   required by the VPPA, they have diluted the value of their customers' property as it exists in the

12   personal information market.

13   **Defendants Unlawfully Retain and Disclose Their Customers' PII In Violation of the VPPA**

14      35.     SCEA, SNEI, and SNEA are American companies that sell and/or rent movies

15   and video games to consumers.

16      36.     As such, SCEA, SNEI, and SNEA are "video tape service providers" as that term

17   is defined by the VPPA, because they engage in the interstate business "of rental, sale, or

18   delivery of prerecorded video cassette tapes or similar audio visual materials."

19      37.     SCEA, SNEI, and SNEA collect their customers' movie and video game purchase

20   and rental histories, and store such information for an indefinite period of time.

21      38.     The movie and video game purchase and rental histories that SCEA, SNEI, and

22   _____

23   [5]      Hann *et al.*, *The Value of Online Information Privacy: An Empirical Investigation* (Mar.
     2003) at 2, *available at* http://www.comp.nus.edu.sg/~ipng/research/privacy.pdf (last visited
24   May 16, 2012).

25   [6]      Tsai, Cranor, Acquisti, and Egelman, *The Effect of Online Privacy Information on
     Purchasing Behavior*, 22(2) Information Systems Research 254, 254 (2011); *see also generally*
26   European Network and Information Security Agency, *Study on monetizing privacy* (Feb. 27,
     2012), *available at* http://www.enisa.europa.eu/activities/identity-and-
27   trust/library/deliverables/monetising-privacy (collecting authorities and discussing consumer
     attitudes toward economics of privacy) (last visited May 16, 2012).

28

SNEA store includes every movie and video game that their customers have ever rented or purchased, as well as information which identifies each customer as having requested or obtained specific movie or video game materials or services.

39. The VPPA requires video tape service providers like SCEA, SNEI, and SNEA to "destroy personally identifiable information [about its customers] as soon as practicable, but no longer than one year from the date the information is no longer necessary for the purpose for which it was collected..." 18 U.S.C. § 2710(e).

40. In practice, then, SCEA, SNEI, and SNEA are required to destroy their customers' video purchase and rental histories as soon as practicable, but no later than one year after the date when the information no longer became necessary for the purpose for which it was collected.

41. Once the period of a customer's access to their rented material expires, SCEA, SNEI, and SNEA have no reason to maintain consumers' personalized rental and purchase histories. Accordingly, SCEA, SNEI, and SNEA systematically and intentionally violate the VPPA by indefinitely storing and maintaining their customers' "personally identifiable information," as that term is defined by the VPPA, in breach of their duty to destroy the information as soon as is practicable, but in no event more than one year after the expiration of the rental periods.

42. Further, the VPPA prohibits "video tape service providers"—like Defendants— from disclosing their customers' PII "to any person with the informed, written consent of the consumer given at the time the disclosure is sought." 18 U.S.C. § 2710(b)(2)(B).

43. In direct violation of subsection 2710(b), SCEA and SNEI share their customers' movie and video game purchase and rental histories with each other, as well as SNEA, without ever asking their customers for permission.

**FACTS RELATING TO PLAINTIFF RODRIGUEZ**

44. Plaintiff Rodriguez was a customer and registered user of SCEA's PlayStation

---

Network ("PSN"). The PSN is an online multiplayer gaming and digital media delivery service. Using the PSN, registered users can purchase, rent, download, and stream television shows, movies, video games, and online magazines to their television sets on a pay-per-view basis.

45.     Once PSN members purchase or rent a movie or video game, the content is instantly viewable and available. For rentals, however, the content is only available for a specified amount of time—between twenty-four (24) hours and thirty (30) days from the time of rental.

46.     Despite the fact that rented movies and video games are paid for at the time of rental, and are only available for a specified amount of time—at most thirty (30) days—SCEA permanently retains a detailed log of these transactions even after a user cancels his or her PSN account, in violation of the VPPA.

47.     Plaintiff signed up for the PSN service in or about February 2008. At that time, the PSN was managed by SCEA.

48.     Plaintiff rented and purchased several movies and video games through SCEA's PSN beginning in 2009 and ending in 2011.

49.     Throughout 2009 and 2011, and continuing to the present, SCEA disclosed Plaintiff's rental and purchase histories to SNEI and SNEA without his consent.

50.     On October 13, 2009 at 12:38 a.m., Plaintiff rented a movie from SCEA.

51.     On or about October 13, 2009 at 12:38 a.m., SCEA disclosed PII relating to Plaintiff's rental identified in Paragraph 50—including a record identifying Plaintiff as having rented a specific movie from SCEA—to SNEI without Plaintiff's informed, written consent.

52.     On October 14, 2009 at 11:25 p.m., Plaintiff rented a movie from SCEA.

53.     On or about October 14, 2009 at 11:25 p.m., SCEA disclosed PII relating to Plaintiff's rental identified in Paragraph 52—including a record identifying Plaintiff as having rented a specific movie from SCEA—to SNEI without Plaintiff's informed, written consent.

54.     On December 21, 2009 at 9:49 p.m., Plaintiff rented a movie from SCEA.

55.     On or about December 21, 2009 at 9:49 p.m., SCEA disclosed PII relating to Plaintiff's rental identified in Paragraph 54—including a record identifying Plaintiff as having rented a specific movie from SCEA—to SNEI without Plaintiff's informed, written consent.

56.     On February 21, 2010 at 7:30 a.m., Plaintiff rented a movie from SCEA.

57.     On or about February 21, 2010 at 7:30 a.m., SCEA disclosed PII relating to Plaintiff's rental identified in Paragraph 56—including a record identifying Plaintiff as having rented a specific movie from SCEA—to SNEI without Plaintiff's informed, written consent.

58.     On February 28, 2010 at 10:32 a.m., Plaintiff rented a movie from SCEA.

59.     On or about February 28, 2010 at 10:32 a.m., SCEA disclosed PII relating to Plaintiff's rental identified in Paragraph 58—including a record identifying Plaintiff as having rented a specific movie from SCEA—to SNEI without Plaintiff's informed, written consent.

60.     On May 2, 2010 at 5:13 p.m., Plaintiff rented a movie from SCEA.

61.     On or about May 2, 2010 at 5:13 p.m., SCEA disclosed PII relating to Plaintiff's rental identified in Paragraph 60—including a record identifying Plaintiff as having rented a specific movie from SCEA—to SNEI and SNEA without Plaintiff's informed, written consent.

62.     On August 28, 2011 at 6:53 p.m., Plaintiff rented a movie from SCEA.

63.     On or about August 28, 2011 at 6:53 p.m., SCEA disclosed PII relating to Plaintiff's rental identified in Paragraph 62—including a record identifying Plaintiff as having rented a specific movie from SCEA—to SNEI and SNEA without Plaintiff's informed, written consent.

64.     The disclosures identified in Paragraphs 50, 52, 54, 56, 58, 60, and 62, above, were not incident and have no connection to any supposed "transfer of ownership" between SCEA, on the one hand, and SNEI or SNEA, on the other. (*See* Order, Dkt. 59 at 2:23-24.)

65.     Plaintiff has not rented or purchased any movies from SCEA since August 28, 2011.

66.     Nevertheless, SCEA failed to destroy Plaintiff's movie purchase, viewing, and

rental history, even though each of Plaintiff's transactions were completed—at most—thirty (30) days after each purchase and/or rental. In fact, SCEA has continued to store and maintain such "personally identifiable information" to this day.

67.     As such, SCEA has retained, and continues to retain, Plaintiff's "personally identifiable information" for an indefinite period of time, without his consent.

68.     In or around September 2011, SNEI took over management of the PSN service.

69.     Defendants contend that this change in management was actually a "transfer of ownership" between SCEA and SNEI, and that any disclosure of Plaintiff's PII at that time was allowed under the VPPA's "ordinary course of business" exception. (*See* Defs. Reply, Dkt. 56 at 6-7.) In truth, the change in management did not involve any transfer of ownership relating to (a) Plaintiff's PII, (b) SCEA or SNEI, or (c) the PSN service itself.

70.     In any event, and even though this case does not implicate the VPPA's "ordinary course of business" exception in any way, each of SCEA's specific disclosures of Plaintiffs' PII occurred before the September 2011 change in PSN management (i.e., those disclosures from SCEA to SNEI/SNEA that occurred on or around October 13, 2009, October 14, 2009, December 21, 2009, February 21, 2010, February 28, 2010, May 2, 2010, and August 28, 2011). None of these specific disclosures relate to any supposed "transfer of ownership" of either the PSN or Plaintiff's PII. (*See* Order, Dkt. 59 at 2:23-24.)

71.     In fact, on April 27, 2011—five (5) months before the September 2011 change in PSN management and not incident to any purported "transfer in ownership"—Plaintiff received a notification from both "Sony Computer Entertainment" (i.e., SCEA) *and* "Sony Network Entertainment" (i.e., either SNEI, SNEA, or both) notifying him that (a) both entities were retaining his personally identifiable information, (b) the database storing his personally identifiable information was "compromised in connection with an illegal and unauthorized intrusion into our network," and (c) "an unauthorized person" obtained access to his personally identifiable information, including his name, address, and, possibly, his PSN purchase and rental

1   history.

2   72.    Moreover, after the September 2011 change in PSN management, SNEI—like

3   SCEA before it—continued to disclose its PSN customers' PII to both SCEA and SNEA without

4   notification and without obtaining consent to do so (e.g., once a PSN customer rented a movie

5   from SNEI's PSN, SNEI would immediately disclosure PII relating to that rental—including a

6   record identifying a customer as having rented a specific movie from SNEI—to both SCEA and

7   SNEA).

8   73.    Plaintiff has never entered into any agreement with SCEA, SNEI, or SNEA that

9   would allow any Defendant to indefinitely retain, use, or disclose his "personally identifiable

10  information." Nor has Plaintiff ever consented to allowing SCEA, SNEI, or SNEA to retain, use,

11  or disclose his "personally identifiable information" for any reason whatsoever, and certainly not

12  indefinitely.

13                                    **CLASS ALLEGATIONS**

14  74.    **Definition of the Class:** Plaintiff brings this lawsuit pursuant to Fed. R. Civ. P.

15  23(b)(2) and (3) on behalf of himself, two Classes, and two Subclasses of persons in the United

16  States defined as follows:

17  **The Unlawful Disclosure Class**: All persons in the United States who (a) rented or
18  purchased a movie or video game from SCEA, during the time that SCEA managed the
19  PSN, wherein (b) SCEA disclosed their "personally identifiable information" to SNEI,
    and/or wherein (c) SCEA disclosed their "personally identifiable information" to SNEA,
20  (d) without written consent given at the time the disclosure was sought.

21  **The SCEA Unlawful Retention Class**: All persons in the United States who (a) rented
    or purchased a movie or video game from SCEA, wherein (b) SCEA retained, for more
22  than thirty (30) days, their "personally identifiable information," (c) without their
    consent.

23

24  **The SNEI Unlawful Retention Subclass**: All members of the SCEA Unlawful
    Retention Class who (a) rented or purchased a movie or video game from SCEA, wherein
25  (b) SCEA disclosed their "personally identifiable information" to SNEI, and (c) SNEI
    retained, for more than thirty (30) days, measured from the time of the members' rentals
26  or purchases, their personally identifiable information, (d) without their consent.

27  **The SNEA Unlawful Retention Subclass**: All members of the SCEA Unlawful

28

Retention Class who (a) rented or purchased a movie or video game from SCEA, wherein (b) SCEA disclosed their "personally identifiable information" to SNEA, and (c) SNEA retained, for more than thirty (30) days, measured from the time of the members' rentals or purchases, their personally identifiable information, (d) without their consent.

(The Classes and Subclasses are referred to collectively as the "Class.")  Excluded from the Class are (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendants, Defendants' subsidiaries, parents, successors, predecessors, and any entity in which the Defendants or their parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's counsel, (4) persons who properly execute and file a timely request for exclusion from the class; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) all persons who have previously had claims similar to those alleged herein finally adjudicated or who have released their claims against Defendants.

75.    **Numerosity:** Although the precise number of Class members is not known at this time, it is clear that individual joinder in this case is impracticable. The Class is composed of tens of thousands of individuals, all of who may be readily identified through Defendants' records.

76.    **Commonality:** Common questions of law and fact pertain to both Plaintiff and the other members of the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include but are not limited to the following:

- Whether SCEA unlawfully retained its customers' PII, including their movie purchase and rental histories;

- Whether SCEA unlawfully disclosed its customers' PII, including their movie purchase and rental histories, to SNEI;

- Whether SCEA unlawfully disclosed its customers' PII, including their movie purchase and rental histories, to SNEA;

- Whether SNEI unlawfully retained SCEA's customers' PII, including their movie purchase and rental histories;

- Whether SNEA unlawfully retained SCEA's customers' PII, including their movie purchase and rental histories;

- Whether SCEA's, SNEI's, and SNEA's conduct violates the Video Privacy Protection Act, 18 U.S.C. §§ 2710, *et seq.*;

- Whether SCEA's conduct constitutes a breach of contract; and

- Whether Plaintiff and the Class are entitled to relief, and the nature of that relief.

77.    **Typicality:** The factual and legal bases of Defendants' liability to Plaintiff and to the other members of the Class are the same and resulted in injury to Plaintiff and all of the other members of the Class. Plaintiff and the other members of the Class have all suffered harm as a result of Defendants wrongful conduct.

78.    **Adequate Representation:** Plaintiff will fairly and adequately represent and protect the interests of the Class members, and has retained counsel competent and experienced in complex class actions. Plaintiff has no interest antagonistic to those of the Class and Defendants have no defenses unique to Plaintiff.

79.    **Predominance and Superiority:** This class action is appropriate for certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy, since joinder of all members is impracticable. The damages suffered by the individual members of the Class will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' actions. It would be virtually impossible for the individual members of the Class to obtain effective relief from Defendants' misconduct. Even if members of the Class themselves could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Economies of time, effort, and expense will be fostered and uniformity of decisions will be ensured.

80.     **Policies Generally Applicable to the Class:** This class action is also appropriate for certification because Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole. Defendants' policies challenged herein apply to and affect all members of the Class uniformly, and Plaintiff's challenge of these policies hinges on Defendants' conduct, not on facts or law applicable only to Plaintiff.

**COUNT I**
**Violation of the Video Privacy Protection Act, 18 U.S.C. §2710(e)**
**(On Behalf of Plaintiff and the SCEA Unlawful Retention Class and the**
**SNEI and SNEA Unlawful Retention Subclasses)**

81.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

82.     SCEA, SNEI, and SNEA are "video tape service providers" as defined by the VPPA because they "engage in the business, in or affecting interstate or foreign commerce, of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials." 18 U.S.C. § 2710(a)(4).

83.     Plaintiff is a "consumer," as defined by the VPPA, because he is a "renter, purchaser, or subscriber of goods or services from a video tape service provider." 18 U.S.C. § 2710(a)(1).

84.     Plaintiff's purchase and rental history is "personally identifiable information" within the VPPA's meaning, because it identifies him by name as having requested, purchased, or rented specific video materials. Accordingly, his purchase and rental history "includes information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider." 18 U.S.C. § 2710(a)(3).

85.     The VPPA requires that video tape service providers "destroy personally identifiable information as soon as practicable, but no later than one year from the date the information is no longer necessary for the purpose for which it was collected." 18 U.S.C. § 2710(e).

86.     Aside from ensuring a customer has access to his or her rented content for up to

30 days, it is not necessary for SCEA, SNEI, or SNEA to store and maintain its customers' personally identifiable information. Therefore, once this rental period expires, neither SCEA, SNEI, or SNEA needs to retain its customers' rental and purchase histories in any identifiable form.

87.     Accordingly, the VPPA imposes a duty on Defendants to destroy each customer's video purchase and rental histories as soon as practicable but in no event later than one year after the expiration of the rental period for each customer's rental.

88.     There is no reason that Defendants cannot practicably destroy their customers' video purchase and rental histories immediately upon expiration of—at most—the 30 day rental period.

89.     Thus, in violation of 18 U.S.C. § 2710(e), SCEA, SNEI, and SNEA knowingly and intentionally store SCEA's customers' personal movie and video game purchase and rental histories for an indefinite period of time—far longer than is "practicable."

90.     Furthermore, and in violation of the 18 U.S.C. § 2710(e), SCEA has failed to destroy its customers' personal information as soon as practicable after it was no longer necessary (i.e., thirty (30) days after the rental and/or purchase) for the purpose for which it was collected (i.e., order fulfillment from the PSN).

91.     Notwithstanding that SCEA failed to destroy Plaintiff's "personally identifiable information" when his transactions were completed and his orders were fulfilled (i.e., thirty (30) days after the rental and/or purchase), SCEA no longer manages the PSN, and thus, the reason that SCEA collected "personally identifiable information" from Plaintiff in the first place no longer exists.

92.     For this reason, and independent of the concerns addressed above, SCEA should have destroyed Plaintiff's "personally identifiable information" when it ceased managing the PSN as it no longer needs Plaintiff's "personally identifiable information" for the reason it was collected.

93.     Similarly, SNEI and SNEA have failed to destroy SCEA's customers' personally identifiable information as soon as practicable after it was no longer necessary for the purpose for which it was collected.

94.     Further, neither SCEA nor SNEI nor SNEA have a policy in place to timely destroy "personally identifiable information," as required by the VPPA.

95.     Accordingly, and in violation of 18 U.S.C. § 2710(e), Defendants have unlawfully retained Plaintiff's and the Classes' "personally identifiable information" and failed to destroy their PII as soon as practicable after it was no longer necessary for the purpose for which it was collected.

96.     Defendants' retention of Plaintiff's and the Classes' "personally identifiable information" in violation of 18 U.S.C. § 2710(e) causes injury in the form of a direct invasion of Plaintiff's and the Classes' federally protected privacy rights.

97.     Defendants' failure to comply with 18 U.S.C. § 2710(e) also deprives Plaintiff and the Classes of the ability to make informed decisions with respect to their privacy.

98.     Additionally, because Plaintiff and the Classes rented and paid for movies from SCEA, and SCEA was obligated to comply with the VPPA, SCEA's failure to timely destroy Plaintiff's and the Classes' PII deprived them of the full value of the services bargained and paid for. Because Plaintiff and the Classes ascribe monetary value to the privacy of their PII, SCEA's failure to timely destroy PII as required by 18 U.S.C. § 2710(e) deprived Plaintiff and the Classes of bargained- and paid-for value, thereby causing them economic damages.

99.     Further, a portion of the purchase or rental price of each movie or video game that Plaintiff and the Classes purchased or rented from SCEA was intended to pay for SCEA's costs in timely destroying their PII, as required by 18 U.S.C. § 2710(e). Because Plaintiff was denied of a service that he paid for and was entitled to (i.e., the timely destruction of his PII), he incurred actual monetary damages.

100.     Also, because the price to purchase or rent the Defendants' movies and

1    videogames assumed compliance with the VPPA and other laws, consumers—including Plaintiff

2    and the Classes—overpaid for their purchases from SCEA.

3        101.    As a result of Defendants' unlawful and continued retention of their "personally

4    identifiable information," Plaintiff and the Classes have suffered privacy and economic injuries,

5    and Defendants' illegal conduct should be enjoined.

6        102.    Because Defendants intentionally and unlawfully retain SCEA's customers' PII,

7    Plaintiff and the putative Classes seek the maximum statutory damages available under 18

8    U.S.C. 2710(c)[7] and 18 U.S.C. § 2707, the latter of which grants a right to relief to "any . . .

9    person aggrieved by any violation of [Title 18, Part I, Chapter 121 of the United States Code] in

10   which the conduct constituting the violation is engaged in with a knowing or intentional state of

11   mind." Further, and because Defendants' violation of the VPPA was willful and intentional,

12   Plaintiffs additionally seek punitive damages pursuant to 18 U.S.C. § 2707(c).

13                                 **COUNT II**
                **Violation of the Video Privacy Protection Act, 18 U.S.C. §2710(b)**
14              **(On Behalf of Plaintiff and the Unlawful Disclosure Class)**

15       103.    Plaintiff incorporates the foregoing allegations as if fully set forth herein.

16       104.    As discussed above in Paragraphs 48-63, beginning in 2009—well before

17   management of the PSN passed to SNEI in September 2011—and continuing to the present,

18   SCEA disclosed Plaintiff's "personally identifiable information" to SNEI without his informed,

19   written consent.

20       105.    Likewise, as discussed above in Paragraph 60-63, beginning in 2010 and

21   continuing to the present, SCEA additionally disclosed Plaintiff's "personally identifiable

22   information" to SNEA without his informed, written consent.

23       106.    Further, after September 2011 (i.e., soon after SNEI assumed management of the

24   PSN) SNEI continued to disclose PII pertaining to PSN customers—including PII pertaining to

25   _____
26   [7]     Plaintiff recognizes that the Court dismissed his claim for damages under 18 U.S.C. §
     2710(c) for violation of the Destruction of Old Records provision, 18 U.S.C. § 2710(e), and thus
27   reasserts such claim—as distinguished from the claim for damages pursuant to 18 U.S.C. § 2707
     for Defendants' alleged violations of 18 U.S.C. § 2710(e)—for appeal purposes only.
28

1  Plaintiff and the rest of SCEA's former PSN customers—to both SCEA and SNEA. Such

2  disclosures were made without Plaintiff's informed, written consent at the time of such

3  disclosures.

4       107.    SCEA's and SNEI's disclosure of Plaintiff's and the Class's "personally

5  identifiable information" deprived Plaintiff and the Class of their statutorily-guaranteed right to

6  monitor and control the disclosure and use of that data. As such, SCEA and SNEI have diluted

7  the value of Plaintiff's and the Class's personal property, and deprived them of the opportunity to

8  sell their personal property for their own financial gain, thereby causing Plaintiff and the other

9  Class members injury-in-fact.

10       108.    SCEA's and SNEI's illegal conduct should be enjoined, and Plaintiff and the

11  Class should be awarded the maximum statutory and punitive damages available under 18 U.S.C.

12  § 2710(c).

### COUNT III
### Breach of Contract
### (On Behalf of Plaintiff and the SCEA Unlawful Retention Class
### and the SNEI Unlawful Retention Subclass )

16       109.    Plaintiff incorporates the foregoing allegations as if fully set forth herein.

17       110.    SCEA offered to rent or sell to Plaintiff and the SCEA Unlawful Retention Class

18  certain movies and video games for specific prices.

19       111.    Plaintiff and the SCEA Unlawful Retention Class accepted SCEA's offers by

20  agreeing to pay the offered prices as consideration for renting or purchasing the movies and

21  video games.

22       112.    Accordingly, SCEA on the one hand, and Plaintiff and the SCEA Unlawful

23  Retention Class, on the other, entered into binding contracts for movie/video game rentals and

24  purchases.

25       113.    Because the laws existing at the time and place of the making of a contract are

26  incorporated into the contract, the contracts between SCEA and Plaintiff and the SCEA Unlawful

27  Retention Class included obligations for the parties to abide by all applicable laws.

28

---

114. Subsequently, and to the extent that SCEA transferred Plaintiff's personally identifiable information to SNEI, SCEA delegated its duty of VPPA compliance—i.e., its duty to keep confidential and timely destroy Plaintiff's and the SCEA Unlawful Retention Class's personally identifiable information—to SNEI. Plaintiff and the SCEA Unlawful Retention Class members were third party beneficiaries of this delegation.

115. SCEA's and SNEI's failure to perform their contractual obligations imposed by the VPPA—i.e., maintaining confidentiality of Plaintiff's and the Classes' PII and timely destroying the same—constitutes a material breach of (a) the contract between Plaintiff and SCEA and (b) the contract between SCEA (as the delegator of VPPA duties owed to Plaintiff and the Class) and SNEI (as the delegatee of VPPA duties owed to Plaintiff and the Class).

116. Plaintiff and the Class have suffered actual damages as a result of SCEA's and SNEI's breaches in the form of the value Plaintiff and the Class members ascribe to the confidentiality and timely destruction of their PII. This amount is tangible and will be calculated at trial.

117. Further, a portion of the purchase/rental price of each movie or video game that SCEA and SNEI sold/rented to Plaintiff was intended to pay for their costs in timely destroying his PII, as required by 18 U.S.C. § 2710(e). Because Plaintiff and the Class were denied of services that they bargained for, paid for, and were entitled to—i.e., confidentiality of their PII and timely destruction of the same—they incurred actual monetary damages.

118. Accordingly, Plaintiff and the Class seek an order declaring that SCEA's and SNEI's conduct constitutes a breach of contract (between Plaintiff and the Classes, on the one hand, and SCEA, on the other), that SNEI's conduct constitutes a breach of contract (between SCEA as delegator, on the one hand, and SNEI as delegatee, on the other), and awarding Plaintiff and the Classes an award of damages in an amount to be calculated at trial (for SCEA's breach of its contract with Plaintiff and the SCEA Unlawful Retention Class, or as third party beneficiaries of the above-described contract between SCEA and SNEI).

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Daniel Rodriguez prays that the Court enter judgment in his favor and against Defendants Sony Computer Entertainment of LLC, Sony Network Entertainment International LLC, and Sony Network Entertainment America, Inc., jointly and severally, for the following relief:

A.     Certify the action as a class action on behalf of the Classes and Subclasses defined above, appoint Plaintiff as Representative of the Classes and Subclasses, and designate his counsel as representatives of the Classes and Subclasses;

B.     Declare that Defendants' intentional conduct, as described herein, violates the Video Privacy Protection Act, 18 U.S.C. §§ 2710, *et seq.*, and constitutes a breach of contract;

C.     Award injunctive and other equitable relief as is necessary to protect the interests of Plaintiff and the Classes and Subclasses, including both an order prohibiting Defendants from engaging in the wrongful and unlawful acts described herein and requiring Defendants to destroy their customers' personal information and video viewing histories that are no longer necessary for the purpose for which they were collected;

D.     Award damages, including:

i.     Statutory damages of $2,500 per violation of 18 U.S.C. § 2710(b) and 18 U.S.C. § 2710(e)[8] pursuant to the VPPA, 18 U.S.C. § 2710(c);

ii.    In the alternative, statutory damages of $1,000 per knowing or intentional violation of 18 U.S.C. § 2710(e), and punitive damages, where applicable, in an amount to be determined at trial, pursuant to the Stored Communications Act, 18 U.S.C. § 2707; or, in the alternative,

iii.   Actual damages in an amount equal to the value Plaintiff and the putative Classes ascribe to the confidentiality and timely destruction of their personally identifiable information and/or the portion of the movie

---

[8]     Again, Plaintiff's claims for relief brought pursuant to 18 U.S.C. 2710(c) for Defendants' alleged violations of 18 U.S.C. 2710(e) are sought herein for purposes of appeal only.

1    purchase/rental prices that were intended to cover the cost of Defendants'

2    VPPA compliance.

3        E.       Award Plaintiff and the Class their reasonable litigation expenses and attorneys'

4  fees;

5        F.       Award Plaintiff and the Class pre- and post-judgment interest, to the extent

6  allowable; and

7        G.       Award such other and further relief as equity and justice may require.

8                                    **JURY TRIAL**

9    Plaintiff demands a trial by jury for all issues so triable.

10
11  Dated: May 16, 2012                     Respectfully submitted,

12                                          **DANIEL RODRIGUEZ**, individually and on
                                            behalf of a class of similarly situated individuals,

13
                                            By: /s/ Ari J. Scharg
14                                          _____

15                                          Sean P. Reis
                                            EDELSON MCGUIRE LLP
16                                          30021 Tomas Street, Suite 300
                                            Rancho Santa Margarita, CA 92688
17                                          Tel: (949) 459-2124

18                                          Jay Edelson*
                                            Rafey S. Balabanian*
19                                          Ari J. Scharg*
                                            EDELSON MCGUIRE LLC
20                                          350 North LaSalle Street, Suite 1300
                                            Chicago, Illinois 60654
21                                          Tel: (312) 589-6370
                                            jedelson@edelson.com
22                                          rbalabanian@edelson.com
                                            ascharg@edelson.com
23
24                                          *Admitted *pro hac vice*
25
26
27
28

1

## **CERTIFICATE OF SERVICE**

2

3       I, Ari J. Scharg, an attorney, certify that on May 16, 2012, I served the above and foregoing
***Second Amended Class Action Complaint***, by causing true and accurate copies of such paper to
be filed and transmitted to all counsel of record via the Court's CM/ECF electronic filing system,
4       on this the 16th day of May, 2012.

5

6                                                                    /s/ Ari J. Scharg

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28